

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

V & R FINE ART, INC.,

      Plaintiff,

  -against-

ONE OIL ON CANVAS PAINTING ENTITLED
"BRICKYARD SHED," BY ARTHUR DOVE,

    and

PETER STIMSON BROOKS,
THE ESTATE OF INEZ BROOKS, a.k.a. THE
ESTATE OF INEZ SEIBERT, a.k.a. THE ESTATE
OF INEZ SEIBERT BROOKS,
THE HELEN SEIBERT FOUNDATION,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X



Civ. A. No.

**COMPLAINT**

**'08 CIV 5031**



### NATURE OF THE ACTION

 Plaintiff brings this action *in rem*, as against the world, by and through its attorneys LEVY

PHILLIPS & KONIGSBERG, LLP, to declare its ownership rights and clear title to *Brickyard Shed*,

a 1934 oil painting by deceased artist Arthur G. Dove.

### JURISDICTION AND VENUE

 1. This Court has jurisdiction pursuant to 28 U.S.C. § 1655, in that this is an action to

remove an incumbrance or cloud upon the title to personal property which is presently located

within the Southern District of New York.

 2. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, in that the

plaintiff is a resident of the State of New York, all of the defendants reside in the State of California,

and the amount in controversy exceeds $75,000.00.

      3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the *res* which is the subject matter of this lawsuit is situated herein.

## THE PARTIES

      4.      Plaintiff, V & R Fine Art, Inc. is a New York corporation with its principal office located at 190 Willis Avenue, Mineola, New York 11501.

      5.      Defendant *res* is a work of art created by artist Arthur G. Dove, entitled *Brickyard Shed*, 1934, oil on canvas 20 x 28 inches (hereinafter referred to as *"Brickyard Shed"* or the "painting").

      6.      Defendant *res* is currently located within the jurisdiction of this Court.

      7.      Defendant, Peter Stimson Brooks, is an individual residing within the State of California at 9619 Montez Court, Windsor, CA 95492.

      8.      On information and belief, Defendant, The Estate of Inez Brooks, a.k.a. The Estate of Inez Seibert, a.k.a. The Estate of Inez Seibert Brooks, is a probate estate, with Peter Stimson Brooks as the Executor of the Estate residing at 9619 Montez Court, Windsor, CA 95492 and Hale M. Knight as Special Administrator and personal representative residing at a presently unknown address in the State of California.

      9.      On information and belief, Defendant Helen Seibert Foundation is an unregistered not for profit and/or charitable organization, with its principal office located at 9619 Montez Court, Windsor, CA 95492.

## FACTUAL BACKGROUND

10.    On or about March 10, 2004, Plaintiff entered into an agreement to purchase *Brickyard Shed* for eight hundred and thirty-three thousand three-hundred dollars ($833,300.00) from Alexandre Fine Arts Inc. (hereinafter "the Alexandre Gallery"), located in the Fuller Building, 41 East 57th Street, New York, New York.

11.    The Alexandre Gallery had been given the painting on consignment to sell, by the paintings owner, the Glenn C. Janss Charitable Remainder Trust.

12.    Plaintiff purchased the painting from the Alexandre Gallery which held the painting pursuant to consignment from the owner.

13.    The terms of Plaintiff's purchase of *Brickyard Shed* from the Alexandre Gallery were set forth in an invoice from the Alexandre Gallery to V & R Fine Art, Inc., dated March 10, 2004. *See* Attached *Exhibit A*.

14.    Plaintiff made final payment to the Alexandre Gallery on or about October 10, 2004.

15.    Plaintiff purchased the painting and title to the painting was completed and fully vested in plaintiff, who was a good faith purchaser for value, on or before October 10, 2004.

16.    On information and belief, prior to Plaintiff's ownership, the painting had been purchased by Mr. William Janss ("Mr. Janss") in 1980 while it was on consignment to the Terry Dintenfass Gallery, in New York. At the time of the purchase, Mr. Janss was a good faith purchaser for value.

17.    On information and belief, there came a time when Mr. Janss transferred ownership of the painting to his wife, Glenn C. Janss, who then transferred title to The Glenn C. Janss Charitable Remainder Trust ("The Janss Trust").

18.    On information and belief, the painting was owned by the Janss family from the date of its purchase in 1980 until 2004, when The Janss Trust consigned the painting to the Alexandre Gallery, a well known and respected New York art merchant/dealer.

19.    On or about December 2007, Plaintiff, as owner of the painting, asked the Reinish Parrish Gallery, 25 East 73rd Street, New York, New York, (hereinafter the "Reinish Gallery"), to sell the painting, and then consigned the painting to the gallery for sale.

20.    Thereafter, the Reinish Gallery attempted to sell the painting and its efforts included advertising *Brickyard Shed* for sale in the February 2008 issue of *Antiques* Magazine.

21.    On or about February 21, 2008, James Reinish, one of the owners of the Reinish Gallery, received a letter from a person claiming to be Peter Stimson Brooks, who asserted that he was the "General Counsel, Executor and Administrator of the Estate of Inez Brooks," who claimed title to *Brickyard Shed* (hereinafter the "Brooks" Letter). *See* Attached *Exhibit B*.

22.    This was the first time during Plaintiff's ownership of the painting any such claim to *Brickyard Shed* was made by a third party.

23.    In his letter, Mr. Brooks asserts that he is the son of Inez Brooks (a.k.a. artist Helen Seibert), and that Inez Brooks acquired *Brickyard Shed* in 1938, while married to his father, Charles Van Wyck Brooks, and at that time, *Brickyard Shed* became their community property.

24.    Mr. Brooks also attached to his letter a document entitled "legal memorandum", in which he asserted, without any supporting documentation, that:

a.    Inez Brooks divorced Charles Van Wyck Brooks on or about 1949 and as a part of an alleged July 18, 1992 property settlement agreement, all artwork owned by the couple (including *Brickyard Shed*) vested to their son Peter Brooks, and or the Inez Brooks estate.

4

b.      Although the couple's divorce was not "finalized" until May 5, 2003, some fifteen years after the death of Inez Brooks, the Brooks letter alleges that the Marin County Probate Court made the divorce decree "*nunc pro tunc* retroactive back to June 1, 1950."

c.      Peter Brooks alleges that on June 19, 1991, less than three months before Charles Van Wyck Brooks' death and a day after his last will was signed, in an alleged "biographical tape recorded for family purposes", Charles Van Wyck Brooks "admitted" that he "took the paintings and sold them to build the beach house".

25.     The so called "legal memorandum" characterizes Charles Van Wyck Brooks' sale of the paintings[1] as a "felony action," whereby Charles Van Wyck Brooks "may have thereby forfeited any community property interest in the Dove paintings that he may otherwise have had."

26.     The Brooks' "legal memorandum" also threatens that the current owner of *Brickyard Shed* could be "compounding a felony" and that a sale of *Brickyard Shed* "could be construed as a criminal action..."

27.     Contrary to what Brooks has alleged concerning his or the Inez Brooks Estate's rights to "all artwork owned by the couple," Mr. Brooks and the Estate relinquished any such alleged rights, if they existed, in 1992, when he signed a Settlement and Release Agreement in connection with the probate of his father's estate.

28.     On information and belief, Charles Van Wyck Brooks disinherited his son, Peter Stimson Brooks, and shortly after his father's death in September 15,1991, Brooks contested his father's will in the Superior Court of California, Marin County Probate Court, *Matter of the Estate*

---

[1]      The other Arthur Dove painting referred to in Brooks' "legal memorandum" is a work entitled *Dancing*, which is not owned by the Plaintiff and is therefore not the subject of this action.

00118230.WPD                                              5

*of Charles Van Wyck Brooks*, No. 36719.

29.    In the aforesaid proceeding, although Brooks claimed his intestacy share of his father's estate, which included the "beach house," on or about April 22, 1992 he entered into a Settlement and Release Agreement, whereby he relinquished all of his rights and the rights of the Estate of Inez Seibert, to the beach house and anything else he could have been entitled to in the Charles Van Wyck Brooks Estate, in exchange for valuable consideration including $200,000.00 and some personal property including three specifically identified Arthur Dove paintings, and *Brickyard Shed* was not one of the paintings listed.

30.    Accordingly, even if Brooks' allegation about his father's June 1991 biographical tape is true, he relinquished any rights to the paintings and the beach house with full knowledge of his father's actions and at a time when there is existed a complete and public record of the ownership of *Brickyard Shed*.

31.    As stated and contrary to these unfounded claims, *Brickyard Shed* was acquired legally in 1980 by William Janss, a purchaser for value, from the Terry Dintenfass Gallery of New York.

32.    On information and belief, at the time of Mr. Janss' purchase, *Brickyard Shed* was on consignment to the Dintenfass Gallery from Charles Van Wyck Brooks, who at that time was still married to Inez Brooks.

33.    The ownership of *Brickyard Shed* by William Janss and then by his wife, has been publicly documented. Ownership of the painting by Mrs. William C. Janss was publicly reported in the 1984 Arthur Dove Catalogue Raisonne` (hereinafter the "Dove catalogue"), where it was both listed as painting 34.3 and prominently illustrated in color. Mrs. Janss' ownership was also noted

in a public show of Arthur Dove works at the Terry Dintentfass Gallery in New York during November 3rd through December 29th 1984, where Mrs. William C. Janss of Sun Valley, Idaho was identified as its owner.

34.     The publication of the Dove catalogue was accompanied by a widely publicized and well known exhibition of the works of Arthur Dove which occurred simultaneously at three prominent Manhattan art galleries - the Terry Dintenfass Gallery, the Barbara Mathes Gallery, and the Salander-O'Reilly Gallery.

35.     The Dove catalogue, as with all catalogues raisonne`, listed and illustrated the complete works produced by the artist. Catalogues raisonne` are publically available and are widely and customarily used by collectors, art dealers, museum curators and others, as the authoritative source to determine the ownership, authenticity, and line of title to specific works of art claimed to be the work of an artist.

36.     Accordingly, collectors and dealers seeking to locate a specific work of art or to determine the provenance, or ownership history, of that work of art, customarily consult the relevant catalogue raisonne`. Attached as *Exhibit C* are the relevant pages of the catalogue raisonne` for *Brickyard Shed*.

37.     Despite the public record of the Janss ownership of the painting, Peter Stimson Brooks, the Estate of Inez Brooks, and the Helen Seibert Foundation, have waited until now, 24 years after *Brickyard Shed* was listed in the Dove Catalogue Raisonne` and displayed at the Dove Show which identified Mrs. William C. Janss as its owner, and nearly five years after the alleged *nunc pro tunc* decree, to come forth and claim ownership of the painting in *Brickyard Shed*.

38.    Since placing *Brickyard Shed* on consignment with the Reinish Gallery, Plaintiff has received a substantial offer for its purchase.

39.    However, the recently alleged claims by Peter Stimson Brooks personally, as well as those he has made through the Inez Brooks Estate and the Helen Seibert Foundation, are all asserted on behalf of Peter Stimson Brooks, who is the sole party in interest, and have caused there to be a cloud or incumbrance upon Plaintiff's ownership and title to *Brickyard Shed* and this has substantially diminished the value of the painting and has caused the prospective buyer to withdraw its offer to purchase the painting.

40.    On or about March 18, 2008, the undersigned, on behalf of Plaintiff, wrote Peter Stimson Brooks demanding that he renounce any claim to legal title of *Brickyard Shed* on behalf of himself or the Estate of Inez Brooks. *See* Attached *Exhibit D*. Thus far, Mr. Brooks has refused to renounce his purported claim nor produced any evidence to support it.

41.    Plaintiff now brings this action to declare once and for all, as against the world, that it is the lawful titleholder of *Brickyard Shed*.

## CAUSE OF ACTION (*28 U.S.C. § 1655*)

42.    Plaintiff repeats paragraphs 1 through 38 as if set forth fully below.

43.    Plaintiff brings this action pursuant to 28 U.S.C. § 1655 to remove a cloud or incumbrance which has arisen on the title to *Brickyard Shed*.

44.    As stated more fully *supra*, Plaintiff acquired lawful and good title to *Brickyard Shed* on or before December 2004 when he paid valuable consideration consisting of $833,300.00 to the Alexandre Gallery, a reputable art dealer/merchant which was selling the painting on consignment

for The Janss Trust, the owner who possessed superior rights of ownership.

45.    At the time of Plaintiff's purchase, *Brickyard Shed* was owned by The Janss Trust which, had obtained title from Mrs. Janss and her husband, William Janss, who in 1980, purchased the painting for valuable consideration paid to the Dintenfaas Gallery, a reputable dealer which acted as agent and consignee selling the painting for an owner with superior rights of ownership.

46.    From the time of its acquisition of *Brickyard Shed* in 2004 through the present, Plaintiff has enjoyed title to *Brickyard Shed* with superior rights of ownership.

47.    Peter Stimson Brooks' Letter as well as other documents written by him unreasonably caused there to exist a cloud upon Plaintiff's right to clear title all of which has impaired Plaintiff's ability to sell *Brickyard Shed* for its market value.

48.    As such, Plaintiff's ability to convey clear title to *Brickyard Shed* has been impaired, causing Plaintiff to suffer the loss of the value of its personal property and extreme financial detriment.

WHEREFORE, Plaintiff brings this action pursuant to 28 U.S.C. § 1655, requesting that this Court enter and Order:

a.    Declaring that V&R Fine Art, Inc., holds legal title to Defendant *Brickyard Shed* as against the world, including the named defendants;

b.    That such title legally vested in Plaintiff on or about October 2004 when, as a good faith purchaser for value, Plaintiff acquired clear title to *Brickyard Shed* from a consignee art dealer who received the painting from a prior owner who had a superior right of ownership;

c.    That Plaintiff's title to *Brickyard Shed* is free and clear of all clouds and encumbrances;

d.    That Plaintiff may lawfully convey *Brickyard Shed* with title free and clear of all clouds and encumbrances;

e.    That this Court retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered herein, and in order to entertain any suitable applications or motions by Plaintiff for additional relief within the jurisdiction of the Court; and

f.    The Court grant such other and further relief as the Court deems just and proper.

Dated:    June 2, 2008

LEVY PHILLIPS & KONISGBERG, LLP

By:_____
    Stanley J. Levy (SJ 7200)
    Theresa A. Vitello (TV 0623)
    800 Third Ave. 13th Floor
    New York, New York 10022

# Exhibit A

# ALEXANDRE GALLERY

March 10, 2004

**INVOICE TO:**
V & R FINE ART INC.
c/o Mr. Richard A. Lippe
190 Willias Avenue
Mineola, New York 11501

---

**Arthur G. Dove (1880 - 1946)**                    **Invoice #04-0124**
Brickyard Shed, 1934 (Morgan #34.3)
oil on canvas, 20 x 28 inches

Study for Brickyard Shed, 1934
watercolor and ink on paper, 5 x 7 inches

Agreed net price for the pair: $833,000.00
                                833,000.00

**TOTAL AMOUNT DUE:**                    $  833,000.00

---

**TERMS:**
Titles transfer only upon receipt of payment in full. Works to remain in the care of the gallery until receipt of final payment in full on or before December 10, 2004. Agreed payment schedule (10 equal monthly payments) as follows: $83,300 due on receipt of invoice; $83,300 due on or before April 10, 2004; $83,300 due on or before May 10, 2004; $83,300 due on or before June 10, 2004; $83,300 due on or before July 10, 2004; $83,300 due on or before August 10, 2004; $83,300 due on or before September, 10, 2004; $83,300 due on or before October 10, 2004; $83,300 due on or before November 10, 2004; final $83,300 due on or before December 10, 2004. Agreed framing to be billed separately at cost. Works remain fully insured by the gallery while in its care and until safely delivered to V & R Fine Art Inc. Insurance coverage provided through the gallery blanket policy with Flather & Perkins, Inc. (800-422-8889, attention Ms. Ann Phenix). Tax re-sale certificate to be provided by V & R Fine Art Inc. with first payment. Thank you.

**ISSUE PAYMENT TO:  Alexandre Fine Art, Inc.**
[Payment may be made by wire transfer: Account name:  ALEXANDRE FINE ART, INC., Citibank account # 96617979, Citibank ABA # 021 0000 89, Citibank branch #21, 976 Madison Avenue, New York, NY 10021].

Approved and agreed:_____

# Exhibit B

# INEZ BROOKS ESTATE

9619 Montez Court
Windsor, California 95492
(707) 837-8355 Fax (707) 837-8394

February 21, 2008

Mr. James Reinish, Owner
REINISH PARRISH GALLERY                    Re: **Recovery of Artworks**
25 East 73rd Street                             PROBATE 32485
New York, New York 10021

Dear Mr. Reinish:

My clients are requesting your assistance in the recovery of allegedly stolen artworks belonging to and property of the Inez Brooks Estate. As it is my Fiduciary Duty, your cooperation in the whereabouts and recovery of these misappropriated Arthur Dove masterpieces is greatly appreciated.

The estate is required by law to inventory all art assets purchased by Inez Brooks during her marriage and subsequent divorce made retroactive in court order to marriage. The party's divorce was made final in California on May 5, 2003 and we have recently been informed of your gallery.

This fact is documented by your advertisement located on page 18 of ANTIQUES magazine, February 2008 issue mentioning the Armory Show.

As an Officer of the Court with Full Authority my client is required to locate, inventory, recover and appraise all assets belonging to Inez Brooks.

Inez Brooks, AKA artist Helen Seibert, born in Virginia on February 16, 1914 met her husband, Charles Van Wyck Brooks in 1935. The couple were married on Monhegan Island in 1936, then traveled to Saint Tropez France. In 1938 the married couple returned to Long Island, New York.

The artist Helen Seibert worked with world famous Arthur Dove at his studio in Long Island and she is considered to be one of the premiere Protégés of this abstract artists whose works were displayed at An American Place Gallery. At the Dove Show in 1938, Inez Brooks acquired two Arthur Dove paintings. They are Brickyard Shed - 1934 and Dancing - 1934. The Provenance shows that both their names were on title as part of their community property.

# INEZ BROOKS ESTATE PROPERTY
## Inventory and Appraisals

## Legal Memorandum

**ESTATE OF INEZ BROOKS**                    **PROBATE #34285**

As an Officer of the Court with Full Authority, I am required to locate, inventory and appraise all assets and real property belonging to Inez Brooks.

Inez Brooks, AKA artist Helen Seibert, born in Virginia on February 16, 1914 met her husband, Charles Van Wyck Brooks in 1935. The couple were married on Monhegan Island in 1936, then traveled to Saint Tropez France. In 1938 the married couple returned to Long Island, New York.

The artist Helen Seibert worked with world famous Arthur Dove at his studio in Long Island and she is considered to be one of the premiere Protégés of this abstract artists whose works were displayed at An American Place Gallery.

At the Dove Show in 1938, Inez Brooks acquired two Arthur Dove paintings. They are Brickyard Shed - 1934 and Dancing - 1934. The Provenance shows that both their names were on title as part of their community property.

However, as part of their **Property Settlement Agreement** signed and dated on July 18, 1992 the document clearly specifies, "All artwork owned by the couple vests to their son Peter Brooks, and or the Inez Brooks estate." Their divorce was made final on May 5, 2003. The divorce was specifically made Nunc-Pro-Tunc retroactive back to June 1st, 1949 by Order of the Court.

On June 19, 1991 in a biographical tape recorded for family purposes. Charles admits on tape, "I took the paintings and sold them to build the beach house." This admission of guilt and confession infers that Charles Brooks allegedly committed a **Felony Action**, and may have thereby forfeited any community property interest in both Dove paintings that he may otherwise have had.

A court determination may be required to place the current alleged "owners" On Notice they could be compounding a felony. Also, any sale could be construed as a Criminal Action unless the property is lawfully restored to the lawful owners, being the Inez Brooks Estate.

ESTATE OF INEZ BROOKS
Marin County, California
February 7, 2008

PARRISH / BROOKS

Page Two

However, as part of their **Property Settlement Agreement** signed and dated on July 18, 1992 the document clearly specifies, "All artwork owned by the couple vests to their son Peter Brooks and or the Inez Brooks estate." Their divorce was made final on May 5, 2003.

The divorce was specifically made Nunc-Pro-Tunc retroactive back to June 1st, 1950 by Order of the Court, and domiciled in New York State.

Since May 5, 2003 by Order of the Domestic Court the parties assets have remained Sole and Separate Property retroactive to June 1, 1949. The Probate Court of Marin County has mandated full Authority for my client(s) to locate, take possession and inventory all assets acquired since 1936.

On June 19, 1991 in a biographical tape recorded for family purposes, Charles admits on tape, "I took the paintings and sold them to build the beach house." This admission of guilt and confession infers that Charles Brooks allegedly committed a **Felony Action**, and may have thereby forfeited any community property interest in both Dove paintings that otherwise had.

While a court determination may be required to place the current alleged Holders On Notice they could be compounding a felony, any sale could be construed as a Criminal Action unless the property is lawfully restored to the lawful owners, being the Inez Brooks Estate. Your cooperation and assistance in the full recovery of allegedly stolen artworks belonging to and property of the Inez Brooks Estate, the whereabouts and recovery of these two misappropriated Arthur Dove masterpieces is greatly appreciated.

Thank you in advance for your participation in this important matter.

Cordially yours,

Peter Stimson Brooks
GENERAL COUNSEL
EXECUTOR AND ADMINISTRATOR
ESTATE OF INEZ BROOKS

KS:cmf
cc/ Ian M. Sammis, Esq.
Ms. Martha Parrish

Exhibit C

*Catalogue of Works*                                                    213



34.2

Collection: Unidentified
Provenance: (An American Place)
  Duncan Phillips, Washington, D.C. (1934)
  Private collection (gift of Duncan Phillips, 1950)
Exhibitions: Individual
  1947 Phillips
  1981 Phillips, no. 30

34.3
BRICKYARD SHED
1934 (doc)
20 × 28
Signed, lower center

Collection: William C. Janss, Sun Valley, Idaho
(1980)
Provenance: (An American Place)
  Charles Brooks
  (Terry Dintenfass Gallery)
Exhibition: Individual
  1947 Downtown (San Francisco only)

34.4
DANCING
1934
25 × 35
Signed, lower center

Collection: Private collection
Provenance: (An American Place)
  Charles and Inez Brooks
  (Terry Dintenfass Gallery)

Exhibitions: Individual
  1939 American Place, no. 15, dated 1934
  1947 Downtown (San Francisco only)
  1974 San Francisco Museum
Group
  1940 American Place, no. 19, dated 1935

34.5
GREEN HOUSE
1934 (doc)
25½ × 31¾
Signed, lower center

Collection: Jay Braus, New York City (1975)
Provenance: (Terry Dintenfass Gallery)
Exhibition: Individual
  1973 Dintenfass, no. 28

34.6
HOUND
1934 (doc)
18¼ × 22
Signed, lower center

Collection: Marjorie Phillips, Washington, D.C. (gift
of Duncan Phillips, 1943)
Provenance: (An American Place)
  Duncan Phillips, Washington, D. C. (1934),
Exhibitions: Individual
  1934 American Place
  1947 Phillips
  1981 Phillips, no. 32

# Exhibit D

LEVY PHILLIPS & KONIGSBERG, LLP
ATTORNEYS AT LAW
800 THIRD AVENUE
NEW YORK, N. Y. 10022

(212) 605-6200
FAX: (212) 605-6290
E-MAIL: slevy@lpklaw.com

STANLEY J. LEVY
(212) 605-6210

March 18, 2008

**CERTIFIED - R.R.R.**
Peter Stemson Brooks
9619 Montez Court
Windsor, CA 95492

Re:    Dove Painting "Brickyard Shed"

Dear Mr. Brooks:

I am writing on behalf of my client, the owner of the Arthur Dove painting entitled "Brickyard Shed" in response to your letters of February 21, 2008 and March 17, 2008 to the Parrish Reinish Gallery of New York City.

The purpose of this letter is to demand that you immediately withdraw your totally baseless claim alleging that you or your supposed client has any ownership interest in the painting.

My client purchased this painting almost 5 years ago from the respected Alexandre Gallery in New York City which had the painting on consignment from Mrs. William Janss. Her husband, a well known and distinguished collector of American modernist art, had originally purchased the painting in 1980 from your father (while married to your mother) who had consigned it to the Terry Dintenfass Gallery of New York City.

The ownership of the painting by Mr. Janss was publicly documented in the 1984 Arthur Dove Catalogue Raisonne, where it was both listed and prominently illustrated in color. Thus, my client was an innocent third party purchaser for value who bought the painting almost 20 years after it was publically identified as owned by a respected art collector. If you ever had a claim, you and your mother have failed to diligently use any of the readily available public information to locate the painting, assert any entitlement, or take any action to recover the painting. The same lack of action on your part occurred with respect to your frivolous claim to ownership of the Arthur Dove work entitled "Dancing". As I'm sure you know, that painting was also purchased by Mr. Janss from your father and was then sold by Sothebys at a public auction on behalf of Mr. Janss.

00112370.WPD

Peter Stemson Brooks
March 18, 2008
Page 2

Although you claim is baseless, it has created an unnecessary "cloud" on the title to the painting and has made sale of the painting impossible. We want that problem eliminated as promptly as possible. Therefore , we insist that you immediately forward a letter to me, with a copy to the Parrish Reinish Gallery, withdrawing the claim made in your February 21, 2008 letter and renouncing any interest in or claim to the painting.

It is important that you understand that my client has been  preliminarily offered approximately $2 million for "Brickyard Shed" through the Parrish Reinish Gallery, subject only to your withdrawal of your frivolous claim. However, the pending sale is time sensitive and any undue delay could result in the withdrawal of that offer.

Should your frivolous claim result in the loss of the sale or cause my client to incur any expense, my client will take action to hold both you and your client responsible for all compensatory and consequential damages as well as all other costs and expenses including attorney fees. Appropriate sanctions will also be sought.

If we do not receive your letter renouncing your claim by March 26, 2008, we will take appropriate action.

Very truly yours,

Stanley J. Levy

bcc: Richard A. Lippe, Esq.

00112370.WPD